IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISON

CASE NO: 8:22-cv-00456-MSS-JSS

CARL SOTO and NIDIA SOTO

   Plaintiffs,

      v.

TLR PROPERTY MANAGEMENT INC.,
and THE RIVER POINTE
APARTMENTS LLC,

   Defendants.

_____/

## AMENDED COMPLAINT

**COMES NOW,** the Plaintiffs, CARL SOTO and NIDIA SOTO, ("Plaintiffs"), by and through their undersigned counsel, and sue the Defendants, TLR MANAGEMENT GROUP, and RIVER POINTE APARTMENTS LLC, ("Defendants"), and for their causes of action, state the following:

## JURISDICTIONAL ALLEGATIONS

1. The Court has original jurisdiction over the action pursuant to 42 U.S.C. § 3604 and 42 U.S.C. § 3617, because this lawsuit was brought under the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2. Venue is proper in the Middle District of Florida, Tampa Division, under 28 U.S.C. §1391(b) because the claim arose in this judicial district.

3. Plaintiffs CARL SOTO and NIDIA SOTO currently rent and reside at 4702 Puritan Road, Apt. B, Tampa, Florida 33617, and are otherwise *sui juris*.

4. Plaintiff NIDIA SOTO was at all times material, and continues to be a person with a disability, as defined by 42 U.S.C. § 3062, as she suffers from severe scoliosis, a deformity of the spine. As a result of this disability, she has a substantial limitation in her mobility including her ability to walk extendedly and walk freely. Mrs. Soto must use a walker to walk in any capacity.

5. In addition, Plaintiff NIDIA SOTO is substantially limited in a major life activity solely by virtue of the substantial impairment of her mobility from a scoliosis and therefore has a disability as defined by law.

6. These conditions substantially affect the living activities of Mrs. Soto, including, but not limited to significantly impairing her mobility.

7. Plaintiff CARL SOTO is an aggrieved person who is associated with his wife, NIDIA SOTO, who is a qualified person with disability.

8. The Defendant, TLR MANAGEMENT GROUP (hereinafter "THE GROUP" or "TLR") is a "person" under 42 U.S.C. § 3602, and § 760.22, Fla. Stat., a real-estate group, licensed to and doing business in Hillsborough County Florida.

9. SIMON GLOVER (hereinafter "GLOVER"), is a former employee of TLR and the property manager of RIVERPOINTE APARTMENTS. He was in a position to, and did, discriminate against plaintiffs, and otherwise is a resident of Florida and is *sui juris*. At all times relevant, GLOVER was acting within the scope of his employment.

10. THE RIVER POINTE APARTMENTS LLC, is a "person" under 42 U.S.C. § 3602, and § 760.22, Fla. Stat., owned by defendant TLR and is one of their real-estate properties licensed to do business and located in Tampa, Florida that owns and operates THE RIVER POINTE APARTMENTS.

11. These DEFENDANTS were personally involved in each and every discriminatory act mentioned *infra* and enforced the discriminatory denial of accommodations to the Plaintiffs with actual knowledge or with reckless disregard of the illegality of such acts.

## GENERAL ALLEGATIONS

12. TLR GROUP operates an apartment complex called THE RIVER POINTE APARTMENTS.

13. For the last 2 years CARL SOTO and his wife NIDIA SOTO have lived at 4702 Puritan Road, Apt. B, Tampa, Florida 33617 located in THE RIVER POINTE APARTMENT complex. During that time, they have made several requests for a handicap parking accommodations for NIDIA SOTO. Plaintiffs live

at the back of THE RIVER POINTE property in a building that has a small parking lot with 11 parking spaces that services over forty rental units. Without accommodations, Plaintiffs are forced to find parking anywhere possible and sometimes end up almost a substantial distance away from their actual home. This excessive walking severely impacts NIDIA SOTO and exacerbates her disability.

14. When CARL SOTO began requesting a reasonable parking accommodation in 2020, THE RIVER POINTE leasing office staff instructed CARL SOTO that if he had certain forms filled out by NIDIA SOTO's primary care physician that they would issue him the spot. This was the start of the "run around".

15. After submitting these forms and providing vehicle and registration information, the staff would not respond to emails and would always ask Mr. Soto to return at a different time when he would try to come speak in person.

16. On October 19, 2020, CARL SOTO again tried to go to the leasing office to confirm he was parking in a rightfully designated spot. After having Mr. Soto sit and wait 10 minutes, a staff member told Mr. Soto the manager was in a meeting but that they had no problem with the spot and would contact him soon.

17. Almost a week later, on October 24, 2020, Plaintiffs' car was towed overnight without any notice and the following day a sign was placed in the area saying there was no parking allowed there.

18. On July 1, 2021, THE RIVER POINTE APARTMENTS came under new management, by the TLR MANAGEMENT GROUP.

19. Plaintiffs met with the new management, TRL employee DILLON MOONEY, during or about the first week of new ownership/management and informed him of their need for an exclusive parking spot for Plaintiff NIDIA SOTA. He also related the discrimination they have faced in the prior year to get a dedicated space.

20. MOONEY told Plaintiffs told Plaintiffs that they would have their handicap spot created within three days. This did not happen. Instead, Plaintiff typically parks in this space if it is available. (*Exhibit A* attached. Note the painted area of the parking space.)

21. Given the very limited parking nearest Plaintiffs unit, parking is at a premium. In October 2021, Plaintiffs were informed by the towing group (813 Towing) employed by TLR that in order for any handicap parking to be allowed or enforced THE RIVER POINTE APARTMENTS LLC would have to purchase the signs and necessary materials.

22. On December 29, 2021, five months after his initial conversation with TLR's Dillon Mooney, Plaintiff CARL SOTO hand delivered a letter to THE RIVER POINTE leasing office regarding their failure to provide exclusive parking

for Plaintiff NIDIA SOTA and warned them that they (Defendants) were violating federal law. (*Exhibit B*)

23. On or about January 5, 2022, after several letters and visits to the leasing office, CARL SOTO was told by the property manager SIMON GLOVER that they would not be providing a handicapped parking spot for Plaintiffs, as that was not a priority for the TLR MANAGEMENT GROUP and they cared about other things which they felt were more important than providing a space for their disabled tenant. In an apparent effort to get Plaintiffs to go away, GLOVER told Plaintiff that Plaintiffs could cancel their lease without penalty if they so desired. During that same conversation about accessible parking, SIMON GLOVER called or received a call from a woman from TLR Group. GLOVER put the call on the speakerphone where CARL SOTO overheard the women say that TLR would not renew the SOTO lease.

24. Defendants never entered into an interactive process with Plaintiffs to determine what type of parking space was needed (car, van, sport utility vehicle); where the access aisles were needed (left side or right side of the vehicle); and whether Plaintiff NIDIA SOTA needed access for a mobility device (walker/cane) or a wheelchair or motorized scooter.

25. Plaintiff NIDIA SOTA needs the exclusive, accessible parking near her apartment in order to have an equal opportunity to use and enjoy her dwelling with

her family just like people who are able bodied. Otherwise, Plaintiff is required to park in non-handicapped parking spaces requiring her to manipulate tight spaces with difficult and unsafe conditions where NIDIA SOTA could fall to the ground.

26. In fact, on February 5, 2022, NIDIA SOTA had to park in a non-handicapped parking space on the other side of the property, away from her dwelling unit because there were no available spaces near her dwelling unit. The parking space left her very little space between cars and she had no room to retrieve her walker from the backseat of the vehicle. While attempting to get her walker, she fell and sustained injuries. Soto's son had to go to the parking area to help his mother get up and use her walker. NIDIA SOTA was required to seek medical care the next day. As a result of this discrimination, NIDIA SOTA has restricted her activities and chooses not to leave her home when she would otherwise have enjoyed her day-to-day activities because she is worried about finding safe accessible parking when she returns home.

27. As a result of this harassment and discrimination, Plaintiffs have actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration, and humiliation, loss of capacity for the enjoyment of life. These losses are either permanent or continuing in nature and Plaintiffs will suffer these losses in the future.

28. As a Manager, SIMON GLOVER, should have been trained as part of his position to understand the provisions of the Fair Housing Act.

## COUNT 1 – FAILURE TO MAKE REASONABLE ACCOMMODATIONS FOR A PERSON WITH A DISABILITY PERSON WITH A DISABILITY
**(42 U.S.C. § 3604(f)(3), § 760.23(8), Fla. Stat.)**

29. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 28 above as though set forth herein.

30. Discrimination is defined as the refusal to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford a person with a disability equal opportunity to use and enjoy a dwelling.

31. A closer, exclusive, accessible parking spot for a person with a mobility impairment is the regulatory example of a reasonable accommodation under the Fair Housing Act. "The accommodation is therefore necessary to afford [person with mobility disability] an equal opportunity to enjoy a dwelling. The accommodation is reasonable because it is feasible and practical under the circumstances." 24 C.F.R. § 100.204 – example 2. (*See Exhibit C*, Department of Justice ADA accessible parking guidance attached; The Courts look to the Rehabilitation Act and the Americans with Disabilities Act for guidance in evaluating reasonable accommodation claims under the FHA, *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1220 (11th Cir. 2008))

32. Defendants' failure to assign a parking spot pursuant at the requests of Plaintiffs CARL SOTO and NIDIA SOTO to accommodate the disability of NIDIA SOTO is discriminatory and unlawful.

33. Such actions by Defendants were in total and reckless disregard of Plaintiff NIDIA SOTO'S rights and indifferent to her medical conditions or needs, and the rights of CARL SOTO as an aggrieved person.

34. As a result of this discrimination, Plaintiffs have actual damages, psychological distress, mental anguish, grievous emotional distress, worry, frustration, and humiliation, loss of capacity for the enjoyment of life. These losses are either permanent or continuing and Plaintiffs will suffer these losses in the future.

**WHEREFORE,** Plaintiffs, CARL SOTO and NIDIA SOTO demand judgment against Defendants, TLR MANAGEMENT GROUP, and RIVER POINTE APARTMENTS LLC, to ensure that discrimination in violation of the Fair Housing Acts does not occur in the future. To enjoin Defendants from discriminating against Plaintiffs herein, and preventing discrimination to other persons based upon disability in the future as follows:

    a. That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against persons with disabilities;

b. That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their disability and immediately order the Defendants to provide a handicap parking spot at a spot as close as possible to plaintiffs so they may enjoy ingress and egress from their home;

c. That the Court enjoin Defendant THE RIVER POINTE APARTMENTS LLC to establish objective policies and procedures to permit an accommodation for a person with a disability;

d. That the Court enjoin Defendant TLR MANAGEMENT GROUP to ensure that each and every residential property managed by Defendant TLR MANAGEMENT GROUP ensure that objective policies and procedures are available and enforced that permit an accommodation for a person with a disability;

e. An award of appropriate compensatory and punitive damages to Plaintiffs, CARL SOTO and NIDIA SOTO, against Defendants to compensate them for their actual damages and for the humiliation, embarrassment and emotional distress cause by the Defendants' discriminatory actions;

f. That the Court declare that the Defendants' acts were willful and wanton and in reckless disregard of the Plaintiffs' civil rights under law;

g. Order Defendants to provide a notice to all owners and tenants of THE RIVER POINTE APARTMENTS their rights under the Fair Housing Act, including their right to have accommodations or modifications if they have a disability;

h. Order Defendant TLR MANAGEMENT GROUP to provide notices to all residents of all properties in which they manage of rights under the Fair Housing Act;

i. Order that the Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently managed and/or controlled by Defendants, of the terms of the Court's Order and the Fair Housing Act, Fair Housing Act and implementing regulations;

j. Order that the Defendants shall maintain for inspection by Plaintiffs and all other tenants or owners at its condominium offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations;

k. Find that Plaintiffs are entitled to an award of attorneys' fees and costs, and reserve ruling as to the amounts and the applicable multiplier until the conclusion of the trial on this matter;

l. And grant any other such relief as this Court deems just and equitable.

### THE PLAINTIFFS DEMAND A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER.
### <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a jury trial for all issues so triable.

Dated this 6th day of April 2022.

Respectfully submitted,

*/s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
J. COURTNEY CUNNINGHAM, PLLC
FBN: 628166
8950 SW 74th Court, Suite 2201
Miami, FL 33156
T: 305-351-2014
cc@cunninghampllc.com